1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CARL LEOPOLD,

11              Plaintiff,                    No. 2:11-cv-0846 JFM P

12        vs.

13   A. NANGALAMA,                            ORDER AND

14              Defendant.                    FINDINGS & RECOMMENDATIONS

15   _____/

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Plaintiff claims that his rights under the Eighth Amendment are being

18   violated by defendant Nangalama's failure to provide him with adequate medical care for severe

19   chronic back pain resulting from three torn discs and curvature of his spine.  This matter is before

20   the court on cross-motions for summary judgment and on plaintiff's motion for temporary

21   restraining order.

22                    SUMMARY JUDGMENT STANDARDS UNDER RULE 56

23              Summary judgment is appropriate when it is demonstrated that there exists "no

24   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

25   matter of law."  Fed. R. Civ. P. 56(c).

26   /////

Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

1  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

2  1436 (9th Cir. 1987).

3        In the endeavor to establish the existence of a factual dispute, the opposing party

4  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

5  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

6  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

7  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

8  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

9  committee's note on 1963 amendments).

10       In resolving the summary judgment motion, the court examines the pleadings,

11 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

12 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

13 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

14 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

15 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

16 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

17 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

18 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

19 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

20 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

21 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

22       On July 31, 2012, the court advised plaintiff of the requirements for opposing a

23 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Woods v. Carey, 684

24 F.3d 934 (9th Cir. 2012), Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert.

25 denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

26 /////

1                                        ANALYSIS

2    I.  Undisputed Facts[1]

3             At all times relevant to this action, plaintiff has been an inmate at California State

4    Prison-Sacramento, and defendant Dr. Nangalama has been a physician.  On January 5, 2007,

5    defendant Nangalama examined plaintiff for complaints of lower back pain.  At that time,

6    plaintiff's chart showed that he was taking 500 mg of naproxen for chronic lower back pain.

7    Defendant Nangalama reviewed an MRI of plaintiff's lumbar spine taken on November 28, 2006,

8    which showed plaintiff's lumbar spine in normal alignment and "'intervertebral disc spaces were

9    preserved at all lumbar levels.'"  Declaration of Nangalama in Support of Motion for Summary

10   Judgment, filed July 25, 2012 (Nangalama Decl.), at ¶ 8 (internal citation omitted).  Plaintiff

11   showed no sign of pain or acute distress during the January 5, 2007 examination.  Defendant

12   Nangalama continued the course of naproxen and ordered another MRI.  He also approved

13   plaintiff's request for physical therapy.  Plaintiff had eight sessions of physical therapy between

14   March 23, 2007 and May 3, 2007.

15            On February 23, 2007, defendant Nangalama approved a refill of the naproxen

16   prescription for sixty days.  Defendant Nangalama saw plaintiff again on May 27, 2007 for lower

17   back pain.  At that time, plaintiff was taking roboxain and naproxen and he reported that the

18   medications were not working.  After the examination, defendant Nangalama prescribed 800 mg

19   of ibuprofen and 50 mg of tramadol for plaintiff's lower back pain.  On June 4, 2007, plaintiff

20   had a lumbar spine MRI which showed that plaintiff "had a minimal L4-5 degenerative disc

21   disease with a tiny posterior annular tear."  Nangalama Decl. at ¶ 18.  Dr. Nangalama did not

22   /////

23

24            [1] All of the facts in this section are taken from statements 1 through 46 of defendant's
     Statement of Undisputed Material Facts, filed July 25, 2012, which plaintiff acknowledges are
     true, see Plaintiff's Opposition to Defendant's Motion for Summary Judgment, filed September

25   20, 2012, at 9, and Defendant's Evidence of Medical Care for Plaintiff's Lower Back Pain from
     April 1, 2009 Until Transfer to California State Prison-Solano, filed February 6, 2013 in response

26   to this court's January 25, 2013 order.

                                                    4

1  recommend surgery because "[s]urgery is not usually recommended for degenerative disc disease

2  because it could damage the spine and result in paralysis." Id. at ¶ 21.

3      "There is no cure for degenerative disc disease." Id. at 20.  The normal course of

4  treatment for degenerative disc disease is pain medication and physical therapy.  Defendant

5  Nangalama and other staff continued plaintiff on this course of treatment.

6      In January 2008, plaintiff was seen by another physician who noted that he was

7  taking morphine for his back pain.  On May 13, 2008, that physician prescribed 10 mg of

8  methadone for plaintiff as "part of the process of getting all patients off morphine."  Ex. A to

9  Declaration of Myers in Support of Defendant's Motion for Summary Judgment, filed July 25,

10 2012 (Myers Decl.), at 15.  In June 2008, plaintiff suffered a seizure and requested reduction of

11 the methadone from 10 mg to 5 mg.  On October 2, 2008, defendant Nangalama saw plaintiff for

12 his lower back pain.  At that time, plaintiff was taking 5 mg of methadone and 500 mg of

13 naproxen for the lower back pain.  Plaintiff wanted to increase the dosage of methadone.  On

14 examination, defendant Nangalama found no sign that plaintiff was in acute distress with the

15 lower back pain and his vital signs were normal.  Defendant Nangalama was also concerned that

16 since plaintiff had been taking 10 mg of methadone when he suffered a seizure, increasing the

17 dose without further examination could trigger more seizures.  Defendant Nangalama concluded

18 that plaintiff's lower back pain was being well treated and he did not increase the methadone.

19 After plaintiff filed an appeal, defendant Nangalama examined him again and drew the same

20 comclusion.  He also requested a lumbar spine MRI.

21      On April 1, 2009, plaintiff had another MRI of his lumbar spine.  The MRI

22 showed that his spine and body alignment were normal but he had "subtle fissure and mild facet

23 arthropathy in his lower back."  Nangalama Decl. at ¶ 40.  Following another examination and

24 plaintiff and review of that MRI, defendant Nangalama increased plaintiff's methadone to 10 mg.

25 Plaintiff has not had another lumbar spine MRI since April 2009.

26 /////

1    Defendant Nangalama next saw plaintiff on August 9, 2009, when he examined

2  plaintiff for lower back pain. Ex. A to Declaration of Myers Regarding Plaintiff's Medical

3  Records (Myers Decl.), filed February 6, 2013, at 4. He prescribed 10 mg of methadone for

4  plaintiff's lower back pain. Id. He next saw plaintiff on February 1, 2011, for complaints of

5  lower back pain, shoulder pain, and asthma. Ex. A to Myers Decl. at 5. The notes show that

6  plaintiff was clinically stable and in no acute distress. Id. The notes also show that plaintiff was

7  taking 10 mg. of methadone for lower back pain. Id. Plaintiff was seen by another physician on

8  August 5, 2011 and October 26, 2011. Id. at 6-7. Plaintiff was taking 10 mg of methadone twice

9  a day for back pain. Id.

10    Plaintiff next saw defendant Nangalama on March 19, 2012. Id. at 9-10. The

11  examination notes show that plaintiff was taking 10 mg of methadone twice a day, had normal

12  range of motion in his extremities, and normal motor strength. Id. at 9. The notes also show that

13  plaintiff was obese and said he would increase his exercise. Id. Plaintiff next saw defendant

14  Nangalama on March 21, 2012. Id. at 10. Plaintiff wanted more methadone. Id. Defendant

15  Nangalama assessed plaintiff's pain as stable, continued the methadone, and prescribed 500 mg

16  of Salsalate. Id. Plaintiff was seen by a staff nurse on May 29, 2012, a physician on June 6,

17  2012 and July 3, 2012, and medical staff on August 27, 2012. Id. at 10-14.

18    Plaintiff saw defendant Nangalama on October 10, 2012 and requested that his

19  methadone be increased from 5 mg to 10 mg. Id. at 15. It is not clear from the record when

20  plaintiff's methadone was decreased to 5 mg. Defendant Nangalama ordered x-rays for lower

21  back and foot pain, and continued plaintiff on 5 mg of methadone and 500 mg of salsalate. Id. at

22  16. On October 12, 2012, plaintiff had a lumbar spine x-ray that showed partial sacralization at

23  L5, no acute compression of his five lumbar vertebrae, well maintained disc spaces, and "[t]iny

24  ventral spurring" at L4. Id. at 18. Plaintiff transferred to CSP-Solano on November 27, 2012.

25  /////

26  /////

6

1   II.  Cross-Motions for Summary Judgment

2          Defendant Nangalama seeks summary judgment on the grounds that the

3   undisputed facts show that defendant Nangalama did not act with deliberate indifference to

4   plaintiff's medical needs and that plaintiff suffered no harm as a result of the care he received.

5   Defendant Nangalama also contends that he is entitled to qualified immunity.  Plaintiff seeks

6   summary judgment on the grounds that he had not had an MRI since April 1, 2009 and he is not

7   receiving appropriate pain medication.

8          A.  Legal Standards

9          In order to prevail on his Eighth Amendment claim, plaintiff must prove that he

10  had a "serious medical need" and that defendants acted with "deliberate indifference" to that

11  need.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  A medical need is serious if  "the failure to

12  treat a prisoner's condition could result in further significant injury or the 'unnecessary and

13  wanton infliction of pain'."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting

14  Estelle, 429 U.S. at 104, 97 S.Ct. 285).  Deliberate indifference is proved by evidence that a

15  prison official "knows of and disregards an excessive risk to inmate health or safety; the official

16  must both be aware of the facts from which the inference could be drawn that a substantial risk of

17  serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 825, 837

18  (1994).  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when

19  they deny, delay, or intentionally interfere with medical treatment."  Hallett v. Morgan, 296 F.3d

20  732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).

21         Mere negligence is insufficient for Eighth Amendment liability.  Frost v. Agnos,

22  152 F.3d 1124, 1128 (9th Cir. 1998).  In addition, "[a] difference of opinion between a physician

23  and the prisoner – or between medical professionals – concerning what medical care is

24  appropriate does not amount to deliberate indifference."  Snow v. McDaniel, 681 F.3d 978, 987

25  (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)).

26  /////

1     B.  Analysis

2         Plaintiff claims that defendant Nangalama violated his rights under the Eighth

3 Amendment by denying him necessary diagnostic procedures and adequate pain medication for

4 his degenerative disc disease and associated back pain.  The undisputed evidence shows that

5 plaintiff had an MRI on April 1, 2009, which showed "persistent, subtle annular fissure at the L4-

6 L5 level", "[m]ild facet arthropathy at the L3-4 and L4-5 levels" and "[n]o central canal or neural

7 foraminal stenosis."  Ex. A to Myers Decl. at 2.  Thereafter, plaintiff was examined by

8 physicians, including defendant Nangalama, or other medical staff in August 2009, February

9 2011, August 2011, October 2011, March 2012, May 2012, June 2012, July 2012, and August

10 2012.  In October 2012, defendant Nangalama ordered a lumbar spine x-ray which showed, as

11 noted above, partial sacralization at L5, no acute compression of his five lumbar vertebrae, well

12 maintained disc spaces, and "[t]iny ventral spurring" at L4.  Id. at 18.  Plaintiff has presented no

13 evidence that the denial of a second MRI caused him harm or affected the course of his treatment

14 adversely.

15         The undisputed evidence shows that defendant Nangalama consistently prescribed

16 pain medication for plaintiff.  Plaintiff's challenge to the course of pain medication is based

17 solely on a difference of opinion with defendant Nangalama and is an insufficient ground on

18 which to predicate liability under the Eighth Amendment.

19         For all of the foregoing reasons, defendant Nangalama is entitled to summary

20 judgment on the merits of plaintiff's Eighth Amendment claims.[2]

21 III.  Plaintiff's Motion for Temporary Restraining Order

22         On November 19, 2012, plaintiff filed a motion for temporary restraining order.

23 Plaintiff seeks an order requiring that he been seen by an orthopedic doctor and that he be

---

24

25     [2]  Because the undisputed evidence shows that defendant Nangalama did not violate plaintiff's rights under the Eighth Amendment, the court need not reach the defense of qualified immunity.  See Saucier v. Katz, 533 U.S. 194, 201 (2001) (where no constitutional right violated,

26 "there is no necessity for further inquiries concerning qualified immunity.")

1   attended to by a physician other than defendant Nangalama.  Defendant opposes the motion on

2   the ground that it has been mooted by plaintiff's transfer to CSP-Solano.

3          The legal principles applicable to a request for injunctive relief are well

4   established.  To prevail, the moving party must show either a likelihood of success on the merits

5   and the possibility of irreparable injury, or that serious questions are raised and the balance of

6   hardships tips sharply in the movant's favor.  See Coalition for Economic Equity v. Wilson, 122

7   F.3d 692, 700 (9th Cir. 1997); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374,

8   1376 (9th Cir. 1985).  The two formulations represent two points on a sliding scale with the focal

9   point being the degree of irreparable injury shown.  Oakland Tribune, 762 F.2d at 1376.  "Under

10  any formulation of the test, plaintiff must demonstrate that there exists a significant threat of

11  irreparable injury."  Id.  In the absence of a significant showing of possible irreparable harm, the

12  court need not reach the issue of likelihood of success on the merits.  Id.

13         In cases brought by prisoners involving conditions of confinement, any

14  preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the

15  harm the court finds requires preliminary relief, and be the least intrusive means necessary to

16  correct the harm."  18 U.S.C. § 3626(a)(2).

17         For the reasons set forth supra, defendant Nangalama is entitled to summary

18  judgment on the merits of plaintiff's Eighth Amendment claim.  A fortiori, plaintiff cannot

19  prevail on the merits of that claim and his motion for temporary restraining order should be

20  denied.

21         In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the

22  Court is directed to assign this action to a United States District Judge; and

23         IT IS HEREBY RECOMMENDED that:

24         1.  Defendant's July 25, 2012 motion for summary judgment (Doc. No. 21) be

25  granted;

26  /////

9

1        2.  Plaintiff's October 19, 2012 cross-motion for summary judgment (Doc. No.

2  28) be denied; and

3        3.  Plaintiff's November 19, 2012 motion for temporary restraining order (Doc.

4  No. 32) be denied.

5        These findings and recommendations are submitted to the United States District

6  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

7  days after being served with these findings and recommendations, any party may file written

8  objections with the court and serve a copy on all parties.  Such a document should be captioned

9  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

10  objections shall be filed and served within fourteen days after service of the objections.  The

11  parties are advised that failure to file objections within the specified time may waive the right to

12  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

13  DATED: February 20, 2013.

14

15                                UNITED STATES MAGISTRATE JUDGE

16

17  12

18  leop0846.msj

19

20

21

22

23

24

25

26